IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FELICIA FAUVIE, | ) | Case No. 4:20-CV-2750 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION**[1] |

Plaintiff, Felicia Fauvie, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  Fauvie challenges the Administrative Law Judge's ("ALJ") negative findings, contending that the ALJ: (i) misevaluated the medical evidence in determining whether she met or medically equaled the mental health listings considered; (ii) failed to apply the proper standards in evaluating her subjective symptom complaints; and (iii) misevaluated the opinion evidence from Jill Thompson.  Fauvie also contends that the statute under which the Commissioner of the Social Security Administration ("SSA") serves is unconstitutional because it violates separation of powers principles.

Because Fauvie has not suffered a particularized injury stemming from the asserted separation of powers violation, she lacks standing to use the allegedly unconstitutional limitation on the president's power to remove the Commissioner as a basis for remand.  Further, because

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).

the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Fauvie's application for SSI be affirmed.

## I.     Procedural History

Fauvie applied for SSI on April 27, 2018.  (Tr. 183-188).[2]  She said that she became disabled on January 1, 2004, due to: (1) post-traumatic stress disorder ("PTSD"), (2) panic attacks, (3) anxiety, (4) "thyroid problems," and (5) "back problems."  (Tr. 203, 207).  The SSA denied Fauvie's application initially and upon reconsideration.  (Tr. 55-68, 70-89).

ALJ Mary Lohr heard Fauvie's case on March 11, 2019 and denied the claim in a March 12, 2020 decision.  (Tr. 12-24, 30-54).  In doing so, the ALJ determined at Step Three of the sequential evaluation process that Fauvie did not have an impairment that met or medically equaled Listings 12.04 (depressive and related disorders), 12.06 (anxiety), and 12.15 (trauma and stressor-related disorders), among others.  (Tr. 15-17).  The ALJ also determined that Fauvie had the residual functional capacity ("RFC") to perform light work, except that:

> [Fauvie] can occasionally reach overhead bilaterally.  [She] can frequently climb ramps and stairs, but occasionally climb ladders, ropes and scaffolds.  [She] can occasionally stoop, kneel, crouch and crawl.  [She] must avoid more than occasional exposure to humidity, wetness, dust, doors, fumes and pulmonary irritants.  [She] must avoid all exposure to unprotected heights, moving mechanical parts, extreme cold and extreme heat.  [She] can perform simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work).  [She] can occasionally interact with supervisors, co-workers and the public.  [She] can tolerate few changes in a routine work setting.

(Tr. 17).  Based on vocational expert testimony that a hypothetical individual with Fauvie's age, experience, and RFC could work in such available positions as an office cleaner, food service worker, or marker, the ALJ determined Fauvie was not disabled.  (Tr. 23-24).  On October 8, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision

---

[2] The administrative transcript appears at ECF Doc. 12.

2

of the Commissioner.  (Tr. 1-3).  And, on December 11, 2020, Fauvie filed a complaint to obtain

judicial review.  ECF Doc. 1.

## II.     Evidence

### A.     Personal, Educational, and Vocational Evidence

Fauvie was born on June 1, 1969 and was 34 years old on the alleged onset date.

(Tr. 203).  She completed high school in 1987, and she had previously worked as a home

healthcare aid and a "picker" in a factory.  (Tr. 208-209).

### B.     Relevant Medical Evidence

#### 1.     Physical Medical Evidence

On May 1, 2017, Fauvie was seen by Carla O'Day, MD, for left shoulder pain from a car

accident.  (Tr. 268).  Fauvie reported that her pain was at a 10, and it was noted that she could

walk without an assistance device.  *Id.*  She was given two prescriptions for pain relief

medications.  (Tr. 269).

Later that same day, Fauvie went to St. Vincent Charity Medical Center's emergency

room complaining of left shoulder pain.  (Tr. 270).  In reviewing her symptoms, she denied any

other issues.  (Tr. 270-271).  She was observed as being orientated, having clear speech, moving

all her extremities, and having a normal gait.  (Tr. 271-272).  Regarding her left shoulder, she

was observed to move her arm expressively, and did not have any bony tenderness.  (Tr. 272).

The treating physician's impression was that she had a left shoulder sprain.  (Tr. 273).

On May 25 and 26, 2017, Fauvie had three x-rays taken of her spine at various segments

due to indications of strain.  (Tr. 265-267).  No fractures were noted, but her cervical spine had

moderate disc height loss at one disc, her thoracic spine had mild degenerative changes, and her

lumbar spine had mild disc height loss at two discs, although the loss did not cause any instability in her flexion or extension.  *Id.*

On June 13 and 20, 2017, Fauvie underwent MRIs of her cervical and lumbar spine. (Tr. 361, 363).  They identified a total of three herniated discs in her spine but noted that the "vertebral bodies" in her spine were otherwise normal.  (Tr. 361, 363).

On May 18, 2018, Fauvie was seen at the Med Care Group, Inc.  (Tr. 309).  In reviewing her symptoms, Fauvie denied any physical symptoms, reporting only that she had anxiety and insomnia.  *Id.*  She was reported as appearing healthy, being alert and orientated, and in all other regards normal.  (Tr. 310-311).  She was assessed with obesity, anxiety, insomnia, and lumbago. (Tr. 312-313).

On November 7, 2019, Fauvie was admitted to the emergency room, complaining of diarrhea that had persisted for a week, abdominal pain, and fatigue.  (Tr. 421).  Fauvie reported that her pain was about an 8 or 9 out of 10, she was feverish, and she felt dehydrated, weak, and fatigued.  (Tr. 422).  Her physical examination was normal; she had diffuse tenderness throughout her abdomen, but an ultrasound did not identify any significant abnormalities. (Tr. 423-424).  She was diagnosed with colitis and "[a]cute abdomen," dehydration, hypokalemia, and leukocytosis.  (Tr. 424).

As part of her hospitalization, Fauvie was also seen by the hospital's internal medicine staff.  (Tr. 433).  On conducting a computerized tomography ("CT") scan of her abdomen and pelvis, the imaging indicated she had infectious or inflammatory pancolitis.  (Tr. 435).  She was diagnosed with sepsis secondary to colitis, an escherichia coli ("E.Coli") urinary tract infection, hypokalemia and hypomagnesemia, hypothyroidism, diabetes, hypertension, and asthma. (Tr. 433, 435).  She was eventually discharged on November 10, 2019.  (Tr. 436).

On December 9, 2019, Fauvie went to the emergency room for complaints of abdominal pain and diarrhea.  (Tr. 499).  She reported that she had a fever and chills; did not have backpain, nausea, or vomiting; and her pain was a constant 10 out of 10.  *Id.*  On physical examination, Fauvie was observed to be uncomfortable but in no distress and had mild periumbilical tenderness in her abdomen on palpitation but was otherwise normal.  (Tr. 490).  Following a CT scan, Fauvie was found to have improved pancolitis and mild leukocytosis.  (Tr. 492).  Once comfortable, she was provided with antibiotics and pain medication and discharged. (Tr. 492-493).

## 2.    Mental Health Medical Evidence

On June 8, 2017, Fauvie was seen by Megan Brown, LISW-S, for a psychiatric assessment at the Center for Families and Children.  (Tr. 293).  Fauvie reported that she was still grieving the loss of her significant other due to a heroin overdose and she was awaiting sentencing for a probation violation.  *Id.*  Regarding her mental health, she reported having bad anxiety, crying easily, not wanting to go out, hating men, not sleeping well, and nightmares.  *Id.* She had a regular appetite and had pain in her back, neck, and left arm from a car accident, which she used muscle relaxers and ibuprofen to manage.  (Tr. 293-294).

Fauvie reported that her current mental health troubles started in her late 20s to early 30s. (Tr. 294).  She denied any psychiatric hospitalizations, self-harm, or violence but did not her prior abuse of alcohol, cocaine, and heroin and that she was currently being treated with Methadone and using nicotine and marijuana.  (Tr. 294-295).  She indicated that she stayed with a friend, was not financially stable, and had multiple prior arrests and convictions.  (Tr. 296). She also reported previously experiencing numerous forms of abuse.  *Id.*  Brown diagnosed

Fauvie with PTSD, anxiety, depression, heroin abuse, cocaine abuse, marijuana abuse, and homelessness.  (Tr. 297-299).

On July 10, 2017, Fauvie was assessed by Deepika Sastry, also of the Center for Families and Children.  (Tr. 301).  Fauvie reported largely the same mental health history and symptoms as she had to Brown, but she included additional symptoms specific to PTSD, such as daily intrusive thoughts, nightmares, and flashbacks; hypervigilance; avoidance; hyperarousal; and emotional numbing.  (Tr. 301-304).  Sastry observed that Fauvie was easily tearful and expressed guilt about her fiancé's death, intermittent hopelessness, hearing her fiancé's voice, and paranoia. (Tr. 301).  Sastry assessed Fauvie with PTSD, major depressive disorder, bereavement, adjustment with anxiety and depression, opiate use with Methadone maintenance, and caffeine use.  (Tr. 305).

On July 11, 2017, Fauvie met with another counselor, Joyce Anderson, from the Center for Families and Children, who reported that they completed a treatment plan and Fauvie was engaged and participated during the session.  (Tr. 326).

On July 31, 2017, Fauvie met again with Sastry.  (Tr. 285).  Fauvie reported that her mood was still "up and down," and she had fair sleep if on Ambien, a fair appetite, low energy, poor concentration, and scattered thoughts.  *Id*.  Sastry observed that Fauvie was easily tearful when thinking of her fiancé, felt hopeless about her social stressors, and continued to report anxiety, depression, fatigue, and insomnia.  (Tr. 286).  Sastry's assessment was unchanged. (Tr. 287).

From July 31, 2017 to September 17, 2018, Fauvie met with Anderson or Tasha Barnett for counseling seven times.  (Tr. 327-335).  Anderson and Barnett consistently reported that Fauvie was engaged and participative during the sessions.  *Id.*  Fauvie occasionally requested

assistance with her SSI application or housing applications.  (Tr. 327-329).  On four occasions, however, Barnett reported that Fauvie expressed nervousness or anxiety in relation to her SSI application and its process or her child support, but those symptoms were relieved on her receiving assistance.  (Tr. 330-331, 333, 335).

On September 24, 2018, Fauvie met with Mary Henderson, LSW, at Center for Families and Children.  (Tr. 336).  Henderson reported that Fauvie was anxious, agitated, tearful and insisted on obtaining a letter stating she could not work to avoid child support payments.  *Id.* Henderson informed Fauvie that she could not provide the letter.  *Id.*  Fauvie became upset but, eventually, was able to "self-regulate" despite remaining agitated.  *Id.*  At a session later that afternoon, Barnett met with Fauvie and reported that she was in a "low mood" but was engaged and participative.  (Tr. 337).  Fauvie cried and reported that she could not be around people because of her anxiety.  *Id.*

On October 1, 2018, Fauvie again met with Barnett, who reported that Fauvie presented with a "low mood" but again participated in the session and was engaged.  (Tr. 338).  Fauvie reported feeling anxiety and depression due to her owing money for child support and not having any income.  *Id.*

From December 12, 2018 to October 25, 2019, Fauvie met sporadically with Jill Thompson, LPCC, at the Oakwood Counseling Center, Inc.  (Tr. 343-344, 358, 411-414). Thompson consistently reported that Fauvie was exhibiting mild depression, anxiety, irritability, and, generally, a distracted thought process.  (Tr. 343-344, 411-414).  The goals of her therapy were, generally to maintain her sobriety, obtain custody of her daughter, and reduce her depression, anxiety, and irritability.  *Id.*  Thompson did not make any decipherable notes on Fauvie's functioning.  *Id.*

C.      **Relevant Opinion Evidence**

1.      **Lay Person Evaluations**

a.      **Fauvie's Function Report**

Fauvie completed an undated function report indicating the limitations caused by her conditions.  (Tr. 215).  She reported that her conditions cause her to have panic attacks, anxiety, depression, back pain, asthma, racing thoughts, and, occasionally, affected her ability to sleep or caused her to not want to get up or care for herself.  (Tr. 215-216).  Her day generally consisted of her taking medication and eating once a day.  (Tr. 216).  Prior to her conditions, she was able to work and live normally.  *Id.*  She did not require reminders to take care of her personal needs or her medicine, and she prepared her own meals but did not cook often because of her depression.  (Tr. 217).  She also did not do any household chores or yardwork because she was homeless and would need encouragement to do any of them due to her anxiety and depression. (Tr. 217-218).  She could ride in a car but did not drive, and she could go out alone but did not like to because of her anxiety and panic attacks.  (Tr. 218).  She would go shopping for groceries about once a month for an hour, cared for her own finances, and watched TV.  (Tr. 218-219). Her conditions had caused her to sleep more.  (Tr. 219).  She stated that she spent time with others by going to the grocery store and doctors' offices.  *Id.*  She "felt more comfortable" when someone was with her due to the panic attacks.  *Id.*  She did not have any problems getting along with family or friends, but her social activities were limited due to depression, anxiety, and panic attacks.  (Tr. 220).

Fauvie reported that her conditions physically limited her ability to lift, bend, stand, climb stairs, follow instructions, and use her hands, and had caused her to develop a fear of loud noises and bright lights.  (Tr. 220-221).  She indicated that she could lift about five pounds; her

8

back hurt when she would bend, stand, or climb stairs; and she got confused following instructions because of her anxiety. (Tr. 220). She estimated that she could walk about one mile before needing to stop and rest for 20 minutes. *Id.* She could maintain her attention for 30 minutes and could follow written instructions 50 percent and oral instructions 75 percent of the time. *Id.* She got along well with others but did not handle stress or changes in her routine well. (Tr. 221).

### b.  Amanda Kraft's Function Report

On December 23, 2019, Amanda Kraft, Fauvie's friend of two years, completed a function report. (Tr. 257, 264). She checked in on Fauvie three times a week and went shopping with her. (Tr. 257). She described Fauvie's functioning as follows: Fauvie was limited because she could not stand or sit all day and she had trouble sleeping due to her mental illness. *Id.* Fauvie woke up; showered and dressed; took her medication; did chores, which took her time because she got tired easily; and would make lunch and dinner. (Tr. 258). She did not have any difficulties with her personal care but needed reminders to take her medication, using a pill box to help her remember what she took. (Tr. 258-259). Fauvie would prepare her own meals, which were usually sandwiches and TV dinners, because she could not stand long enough to prepare larger meals. (Tr. 259). She would clean the house about two days a week for three to four hours, with several breaks, and did laundry about once a week. *Id.* She did not need encouragement to do those chores. *Id.*

Kraft stated that Fauvie would go outside one to two hours a day, if she felt up to it, and would ride in a car. (Tr. 260). She did not like to go out alone because she felt more comfortable with someone else "in case something happens." *Id.* Fauvie would go shopping for groceries, clothing, and household items about twice a week for two to three hours a trip. *Id.*

She was capable of taking care of her own finances. *Id.* Her hobby was watching TV, which she did daily, and she visited with family and friends. (Tr. 261). She got along with others, but since her injury she had "not [been] up for going out a lot." (Tr. 262).

Physically, Kraft indicated that Fauvie's back limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. *Id.* She could walk a couple blocks and then needed to rest for 10 to 12 minutes. *Id.* She could pay attention for about a half hour and followed instruction and complete tasks well. *Id.* She did not have any problems getting along with authority but did not handle stress well. (Tr. 263).

### 1.    Physical Health Opinions

#### a.    Physical Consultant Examiner – Paul Schefft, MD

On January 14, 2019, Fauvie underwent an internal medicine examination with Paul Schefft, MD, for her complaints of back pain, shoulder pain, and asthma. (Tr. 346). A review of her symptoms was normal, and, on physical examination, Dr. Schefft indicated that she walked normally without being unsteady, lurching, unpredictable, or requiring a handheld assistive device. (Tr. 347). The remainder of her physical examination was, generally, normal. (Tr. 347-348). Dr. Schefft noted that her muscle strength was abnormal, assessing it as a 3 to 4 out of 5 bilaterally in all her extremities, but there was no evidence of atrophy. (Tr. 349). Dr. Schefft's impression was that she had a lower back strain, shoulder pain, and asthma. *Id.* He opined that Fauvie's ability to perform work-related activities, such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects "appear[ed] to be at least moderately impaired." (Tr. 350).

Dr. Schefft also provided manual muscle testing that indicated Fauvie had 4 out of 5 muscle strength on her right upper extremity and both lower extremities and between 3 or 4 out

10

of 5 on her left upper extremity.  (Tr. 351).  She also had normal hand manipulation.  *Id.*  He reported that she had a reduced range of motion in her flexion, extension, and left rotation in her cervical spine and in her shoulders and elbows.  (Tr. 352-353).  She had normal range of motion in her wrists and hands.  (Tr. 353).  She had reduced range of motion in her dorsolumbar spine, hip, knees, and ankles, generally, as well.  (Tr. 353-354).

### a.  State Agency Consultants

On July 16, 2018, Leon Hughes, MD, reviewed Fauvie's physical limitations based on the medical evidence.  (Tr. 62-63).  He found that Fauvie could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk for 6 hours in an 8-hour day, and was unlimited (other than in her lifting and carrying) in her ability to push or pull.  (Tr. 63).  He noted that, although Fauvie had back problems, her most recent examination indicated that, with medication, she could function within normal limits.  *Id.*  He did not assess Fauvie with any postural, manipulative, visual, communicative, or environmental limitations.  *Id.*

On January 1, 2019, Bradley Lewis, MD, reviewed the medical evidence on reconsideration.  (Tr. 81-84).  He found that Fauvie was limited to occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, and had the same walking, standing, and sitting limitations.  (Tr. 81).  He added that Fauvie could frequently climb ramps/stairs; occasionally climb ladders, stoop, crouch, or crawl; and was unlimited in her balancing, kneeling, handling, fingering, and feeling.  (Tr. 82).  She was limited, however, in reaching overhead with either arm.  *Id.*  She did not have any visual or communicative limitations.  *Id.*  Dr. Lewis also found that she should avoid concentrated exposure to extreme cold, heat, or humidity, or fumes, but she had no limitations with regard to wetness, noise,

vibrations, or hazards.  (Tr. 82-83).  Dr. Lewis specified that he added the environmental

limitations due to Fauvie's asthma.  (Tr. 83).

### 2.    Mental Health Opinion Evidence

#### a.    Psychological Consultant Examiner – Jennifer Haaga, Psy.D.

On August 16, 2018, Fauvie was seen by Jennifer Haaga, Psy.D., for a clinical interview

and mental status examination.  (Tr. 317).  Fauvie reported being sober for one year but having

previously used heroin, crack and powder cocaine, and marijuana.  (Tr. 318).  Fauvie stated that

she did not do much during the day but would do dishes and managed her own finances.

(Tr. 320).  Regarding her mental status, Dr. Haaga reported that Fauvie appeared groomed and

hygienic for their interview, she was cooperative during the process, and she maintained good

eye contact.  *Id*.  Dr. Haaga observed that, although hypertalkative, Fauvie' speech was

understandable and normal in rate, rhythm, and volume; she had logical, organized, coherent,

and tangential thought processes; she had a depressed mood; and she was anxious but congruent

in her affect.  *Id.*  Fauvie reported that her appetite and sleep was problematic.  *Id.*  Dr. Haaga

noted that Fauvie demonstrated some motor manifestations of her anxiety, such as appearing

flustered and short of breath at the beginning of the interview.  (Tr. 321).  Fauvie reported she

experienced anxiety all the time and she had panic attacks, nightmares, symptoms of PTSD and

agoraphobia, but denied symptoms of a panic disorder.  *Id.*  Dr. Haaga indicated that Fauvie's

mental content appeared normal, she was orientated to person, place, time, and situation, and she

could recall 5 digits forward, 4 digits backward, and 2 out of 3 objects after 1 minute and after 5

minutes.  *Id.*

Overall, Dr. Haaga determined that Fauvie's cognitive functioning was low average.  *Id.*

Fauvie's attention and concentration were adequate, as well as her ability to for abstract thinking.

12

*Id.*  Dr. Haaga indicated that Fauvie demonstrated some difficulties during the evaluation and reported having difficulty remembering appointments and medication.  (Tr. 321-322).  Fauvie also appeared to have fair common-sense reasoning, judgment, and insight.  (Tr. 322).  Dr. Haaga diagnosed Fauvie with PTSD, "other specified personality disorder," "other specified anxiety disorder," stimulant use disorder, cannabis use disorder, and opioid use disorder.  *Id.* Her prognosis was that Fauvie could experience some improvement if she continued to engage in treatment and abstain from substance use but noted that she reported that her situation was contributing to her depression and anxiety.  *Id.*

Functionally, Dr. Haaga assessed that Fauvie had some difficulties with memory, but she was capable of comprehending and completing simple routine tasks as well as some more complex, familiar tasks.  (Tr. 323).  As to Fauvie's ability to concentrate and persist or maintain pace, Dr. Haaga assessed that Fauvie's anxiety symptoms would likely cause difficulties in the area or would exacerbate those difficulties.  *Id.*  As to her social interaction, Dr. Haaga assessed that Fauvie's functioning was adequate and she described distant family relationships and a history of interpersonal problems; ultimately, she concluded that Fauvie would likely struggle to appropriately manage conflict or receive feedback about her work and performance.  (Tr. 324). As to Fauvie's ability to respond appropriately to work pressures, Dr. Haaga assessed that she continued to experience difficulties and had a lack of social support that may negatively impact her ability to work stand stress and pressures from work.  *Id.*

### b.  Medical Source – Jill Thompson, LPCC

On December 11, 2019, Thompson completed a medical impairment questionnaire for Fauvie.  (Tr. 357-358).  Clinically, she found that Fauvie had severe depression, anxiety, and irritability, but her prognosis was fair.  (Tr. 357).  She opined that Fauvie either would not be

able to meet competitive standards for work-related activities on a day-to-day basis in a regular

work setting or had no useful ability to function in every category of every area of mental health

functioning.  (Tr. 357-358).  Thompson opined that Fauvie's impairments would cause her to be

absent from work about one day per week and her symptoms would cause her to be off task

about 65 percent of the day.  (Tr. 358).

<strong>c.      State Agency Consultants</strong>

On August 22, 2018, Kristen Haskins, Psy.D., evaluated Fauvie's mental health

limitations based on the medical evidence.  (Tr. 63-66).  As to Fauvie's understanding and

memory, Dr. Haskins found that she was not significantly limited, except for her ability to

understand and remember detailed instruction, which she found to be moderately limited.

(Tr. 64).  She specified that Fauvie should be limited to work tasks that are no more than

moderately complex and familiar.  *Id*.  As to Fauvie's concentration and persistence, Dr. Haskins

found that Fauvie had moderate limitations in her ability to: (i) carry out detailed instructions;

(ii) maintain attention and concentration for extended periods; (iii) work in coordination with or

in proximity to other without being distracted by them; and (iv) complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods.  *Id*.  Dr. Haskin

specified that Fauvie could complete "short cycle tasks" in a setting that did not have fast paced

demands where she could work away from others.  (Tr. 65).  Otherwise, Dr. Haskins found that

either the evidence did not support any limitations or that the limitation was not significant.

(Tr. 64).

As to Fauvie's social limitations, Dr. Haskins found that Fauvie was moderately limited

in her ability to (i) interact appropriately with the general public, (ii) accept instructions and

14

respond appropriately to criticism by supervisors, and (iii) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 65).  Otherwise, Dr. Haskins found that Fauvie was not significantly limited.  *Id.*  She specified, however, that Fauvie was limited to no more than occasional interactions with supervisors, coworkers, and the general public.  *Id.*  As to her adaptive limitations, Dr. Haskins found that Fauvie was moderately limited in her ability to respond appropriately to changes in the work setting but was otherwise not significantly limited or the evidence did not show a limitation.  *Id.*  She specified that Fauvie could work within a set routine where major changes were explained in advance and gradually implemented to allow Fauvie time to adjust to the new expectations.  *Id.*  She added that Fauvie's "ability to handle routine stress and pressure in the workplace would be reduced but adequate to handle tasks without strict time limitations or production standards."  (Tr. 65-66).

On December 4, 2018, Katherine Fernandez, Psy.D., reached the same conclusions on reconsideration of the medical evidence.  (Tr. 84-86).

### B.    Relevant Testimonial Evidence

Fauvie testified at the hearing.  (Tr. 36-49).  She explained that she had a number of prior convictions, and she had been sober for 27 months.  (Tr. 38-39).  Her boyfriend supported her, and she received food stamps and Medicaid.  (Tr. 39-40).  She had graduated from high school, but she had not worked for the last 15 years because "it just doesn't seem to go very well" and she had not ever worked at a job for longer than six months.  (Tr. 40-41).

Fauvie explained that she was unable to work because her mind worked too fast and would become fixated on things.  (Tr. 42).  She tried to go to Oakwood Counseling every week and she took medication for her mental health.  (Tr. 43).  She did not socialize much or do much during the day, except stress.  (Tr. 44).  She would watch TV throughout the day and sometimes

make toast, but she did not eat lunch.  *Id.*  She would occasionally make dinner, and she would clean the floors and do laundry.  (Tr. 45).  Her boyfriend would usually do the grocery shopping. *Id.*  Fauvie also stated that she had back issues that she was taking medication for.  (Tr. 45-46).

Fauvie stated that she did not think she could work full time because she could not handle the stress and her medication did not help with her obsessive thinking.  (Tr. 46-47).  She also had issues with reaching with both arms, but particularly her right, because of a car accident. (Tr. 47-48).  She had gotten therapy for it, but her arm would still "pop" when moving.  (Tr. 48).

## II.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. § 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is not a high threshold for sufficiency.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation marks omitted).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quotation marks omitted).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  And "it is not necessary that this court agree with the Commissioner's findings," so long as it meets this low standard for evidentiary support.  *Rogers*, 486 F.3d at 241.  This is so because the

Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").  And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

## B.    Separation of Powers Violation

Fauvie contends that the ALJ's decision came after and was based on an unconstitutional delegation of authority to the Commissioner and, thus, a violation of separation of powers principles warranting remand.  ECF Doc. 13 at 8-9.  Fauvie argues that the SSA's statute governing removal of the Commissioner, 42 U.S.C. § 902(a)(3), has the same structure as that for the Consumer Financial Protection Bureau ("CFPB"), whose structure was deemed unconstitutional in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) (hereafter "*Seila Law*").  ECF Doc. 13 at 8-9.  This structure, she argues, results in the Commissioner acting on improperly delegated authority in deciding SSA cases and issuing

policies. ECF Doc. 13 at 8-9. Because of the improper delegation and creation of policies in effect during her application, she contends remand is warranted. ECF Doc. 13 at 8-9.

The Commissioner concedes that § 902(a)(3) is unconstitutional but contends that remand is unwarranted. ECF Doc. 16 at 9-21. The Commissioner argues that, under *Collins v. Yellen*. 141 S. Ct. 1796 (2021), Fauvie must show that the removal provision actually caused her harm; and this she fails to do because: (1) the ALJ in Fauvie's case was appointed under the Acting Commissioner and, thus, was not subject to the offending provision; and (2) Fauvie has not shown any harm because the decision on her application was unaffected by the unconstitutional removal statute. ECF Doc. 16 at 9, 11-16. Additionally, the Commissioner argues that remand is not proper under the harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and prudential considerations. ECF Doc. 16 at 17-21.

In her reply brief, Fauvie reads the Commissioner's brief as only addressing the merits of her claim, implicitly contending that the Commissioner has forfeited any argument on standing. ECF Doc. 17 at 3. She further argues that the delegation of authority from the Commissioner to the ALJs and the exercise of that authority, such as through the policies governing ALJ opinion writing and modification of musculoskeletal impairments, in her case caused sufficient injury. ECF Doc. 17 at 3-5. Lastly, she contends that she was also injured because she was deprived of a constitutionally valid hearing and contests the application of the various doctrines the Commissioner relies on in support of her harmlessness argument. ECF Doc. 17 at 5-8.

In *Collins*, the Supreme Court reviewed the constitutionality of the Federal Housing Financial Agency's removal structure for its directors, which prohibited the president from removing the directors except "for cause." 141 S. Ct. at 1783. The Court held that the limitation on the president's removal authority over a federal executive branch agency director violated the

principle of separation of powers.  *Id.* at 1783.  In doing so, the Supreme Court relied on its prior

precedent in *Seila Law*.  *Id.*  In *Seila Law*, the Court held that the CFPB removal structure, which

limited the removal of the CFPB Director by the president only to instances of "inefficiency,

neglect of duty, or malfeasance of office," violated the separation of powers between Congress

and the Executive Branch.  *Id.* at 2197.

Before we address the merits of Fauvie's constitutional argument, the court has an

obligation to ensure it has jurisdiction.  *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

Regardless of whether the parties raise or have disclaimed an issue, the court must ensure the

parties have standing to raise the issue.  *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945,

1950 (2019) ("One essential aspect of this [jurisdiction] requirement is that any person invoking

the power of a federal court must demonstrate standing to do so" (quoting *Hollingsworth v.

Perry*, 570 U.S. 693, 704 (2013)).

The standing requirement enforces the Constitution's limitation that the Judicial Branch

may only decide "Cases" and "Controversies."  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

559-560 (1992).  To demonstrate standing, a plaintiff must show that she has suffered an "injury

in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a

favorable decision."  *Id.* at 560-561 (internal alterations removed).

I find that Fauvie has failed to establish "an injury in fact" arising from the

Commissioner's work while she was subject to an allegedly unconstitutional removal statute.  An

"injury in fact" must be more than an abstract asserted harm and must be an "invasion of a

legally protected interest" that is: (i) concrete; (ii) particularized; and (iii) actual or imminent.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).  Fauvie

initially asserts only that the alleged separation of powers issue contaminated the administrative

19

process by which a decision was reached on her claim and that a "presumptively inaccurate" legal standard was used.  However, she cites no authority for her presumption.  In her reply, Fauvie attempts to bolster her asserted injury by contending that the Commissioner's policy changes on how ALJ decisions were written and the modification of the musculoskeletal listing of impairments harmed her.  But Fauvie's contentions fail in one significant way – she never argues that these issues affected the decision on *her* claim.  Fauvie bases her argument that she was deprived of a valid administrative process on the separation of powers issue.  *See* ECF Doc. 13 at 8-9; ECF Doc. 17 at 3-5.  She never demonstrates that *because* of the separation of powers violation the ALJ in her case applied a legal standard the president might have disagreed with, or that a different Commissioner might have altered.  And Fauvie's other claimed harms are similarly flawed.  She makes no argument that the changes in the musculoskeletal listing somehow adversely affected her ability to prove her disability or that the changes in how ALJ decisions were written created a due process issue.

Absent some argument demonstrating a personal connection between those changes and the decision on her claim, Fauvie asks this court to base its jurisdiction on a generalized grievance.  And this has long been insufficient to constitute a "Case" or "Controversy."  *See Lujan*, 504 U.S. at 560 n.1 (holding that for an injury to be "particularized" the complained of conduct must have affected the plaintiff "in a personal and individual way"); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (holding that harm which affected the plaintiff and every citizen's interest in the proper application of the constitution and laws, and relief that did not tangibly benefit him more than other citizens was not a case or controversy).

Because Fauvie has not alleged a particularized injury stemming from the asserted separation of powers violation, she has failed to meet her burden of establishing standing.  *Va.*

20

*House of Delegates*, 139 S. Ct. at 1950. And the court must not, therefore, consider the merits of her constitutional challenge to the SSA.

### C.       Step Three: Medical Listings

Fauvie contends that the ALJ erred in evaluating her mental health impairments under the mental health medical listings. ECF Doc. 13 at 10-14. She argues that the medical evidence supported greater mental health limitations that the moderate limitations found by the ALJ. ECF Doc. 13 at 10-12. Fauvie asserts that the ALJ's citation to her daily activities did not provide a complete picture. ECF Doc. 13 at 12-13. Further, she argues that the ALJ made only a perfunctory analysis of her Step Three findings and failed to consider the full combination of her impairments. ECF Doc. 13 at 13-14.[3] The Commissioner disagrees. ECF Doc. 16 at 23-26. Fauvie reiterates her arguments in reply. ECF Doc. 17 at 2-3.

At Step Three, the claimant has the burden to show an impairment that meets or medically equals all of the criteria of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Rabbers v. Comm'r of SSA*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing."). In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (noting that, without

---

[3] Fauvie makes a passing reference to the ALJ's analysis of her conditions under Listing 1.04 and the "combination" of her impairments. *See* ECF Doc. 13 at 13-14. However, Fauvie does not make any argument regarding the listing, merely reciting facts of the ALJ's analysis from the record and presents only conclusory assertions that the ALJ failed to consider the combination of her impairments. As a result, I consider the argument to have been waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived. If is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones").

such analysis, it is impossible for a reviewing court to determine whether substantial evidence supported the decision).  The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ."  *See Sheeks v. Comm'r of SSA*, 544 F. App'x 639, 641 (6th Cir. 2013).  "If, however, the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing."  *Id.* at 641; *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any Step Three evaluation of the claimant's physical impairments, when the ALJ found that the claimant had the severe impairment of back pain).

"A claimant must do more than point to evidence on which the ALJ could have based [her] finding to raise a 'substantial question' as to whether [she] satisfied a listing."  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641-42).  "Rather, the claimant must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing."  *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three."  *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a listing's criteria).

Medical Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety disorders), and 12.15 (trauma- and stressor-related disorders) provide the medical criteria for meeting listed mental health impairments.  20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15.  To meet these listings the claimant must show that she meets: (1) the impairment-specific medical criteria in Paragraph A; and (2) the functional limitations criteria in Paragraphs B or C.  *See id.*  To meet Paragraph B, the claimant must show that her condition resulted in an "extreme

limitation of one or marked limitation of two, of the following areas of mental functioning:

(1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist

or maintain pace; (4) adapt or manage oneself."  20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04,

12.06, 12.15.  To meet the criteria for Paragraph C, a claimant must show that she had a:

> Medically documented history of the existence of the disorder over a period of at
> least 2 years, and there is evidence of both: (1) medical treatment, mental
> health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing
> and that diminishes the symptoms and signs of [the] mental disorder; and
> (2) marginal adjustment, that is, [the claimant has] minimal capacity to adapt to
> changes in [her] environment or to demands that are not already part of [her] daily
> life.

20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15.

The ALJ applied the proper legal standards and reached a determination supported by

substantial evidence in finding that Fauvie did not meet or medically equal Listings 12.04, 12.06,

or 12.15.  42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241.  Although Fauvie has arguably failed

to meet her burden of presenting "specific evidence that demonstrates [she] reasonably could

meet or equal every requirement of the listing," Fauvie has asserted that she had marked

limitations in three of the four areas of mental functioning, challenging all but her ability to

understand and apply information.  *See* ECF Doc. 13 at 10-13.

Regardless of the sufficiency of Fauvie's arguments, the ALJ applied the proper legal

standards in evaluating the mental health listings.  Specifically, the ALJ (i) addressed all of the

specific Paragraph B areas of functioning; (ii) addressed the Paragraph C criteria; (iii) noted

Fauvie's subjective statements regarding the areas of function; (iv) compared Fauvie's

statements to the medical evidence; and (v) provided citations to the evidence supporting her

conclusions that Fauvie had only moderate limitations.  *See Reynolds*, 424 F. App'x at 416;

(Tr. 15-16).  With such detail, the ALJ satisfied each of her regulatory obligations.  20 C.F.R. pt.

404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15; *Sheeks*, 544 F. App'x at 641.  Although Fauvie contends that such analysis was legally inadequate and failed to provide a sufficiently detailed explanation, the ALJ provided more than enough explanation to allow Fauvie and this Court to exercise meaningful judicial review of the ALJ's comparison and the facts and the listings' requirements.  *Reynolds*, 424 F. App'x at 416.

Moreover, with regard to Paragraph C, the ALJ acknowledged support for the existence of Fauvie's disorders for at least two years (Tr. 16), but the ALJ found that her evidence failed to meet the second requirement that she had only a minimal capacity to adapt to changes in her environment or demands not already part of her daily life (Tr. 16-17).  *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15

Substantial evidence supports the ALJ's conclusion that Fauvie did not have marked limitations in the three challenged areas of functioning under Listings 12.04, 12.06, or 12.15.  42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241.  First, as to her mental functioning when interacting with others, such evidence includes: (1) treatment notes indicating Fauvie was engaged, and participative in her sessions (Tr. 327-335, 337-338); (2) Dr. Haaga's assessment that Fauvie was cooperative and had an adequate ability in the area, although she had some limits (Tr. 320, 324); (3) Kraft reported that Fauvie visited with family and friends (Tr. 261); (4) the state agency consultants both found her to be only moderately limited in the this area (Tr. 64, 85); and (5) the lack of treatment notes indicating any trouble interacting with Fauvie.  *Biestek*, 139 S. Ct. at 1154.

Additionally, substantial evidence supported the ALJ's findings specifically as to the mental functioning area for concentrating, persisting or maintaining pace.  Such evidence includes: (1) Dr. Haaga's assessment that she had adequate functioning and any limitations

24

would likely stem from her anxiety symptoms (Tr. 321, 323); (2) her and Kraft's reports that she could watch TV and prepare meals (Tr. 217, 258-259); (3) the state agency consultants' assessments that she was only moderately limited in the area (Tr. 64-65, 84-85); and (4) the apparent relationship between Fauvie's anxiety reducing once she had help with her circumstances, such as when she received help with her SSI application (Tr. 330-338). *Biestek*, 139 S. Ct. at 1154.

Fauvie raises a concern that the ALJ's reliance on her daily activities was not reflective of her actual limitations. ECF Doc. 13 at 12. That concerned me as well. The ALJ cited Fauvie's television consumption as support for her ability to concentrate and pay attention. (*See* Tr. 16). This strikes me as a bit farfetched. Idiomatically referred to as the "idiot box," anyone who sits and watches a television program for a reasonable amount of time will soon realize little if any concentration or attention is *required* by the activity. Perhaps Fauvie is a rare exception and is absorbed by whatever programming she consumes. But such an assumption is not supported by the record and is an unreasonable basis for the ALJ to discount her limitations in concentrating. Unlike reading a book, completing a puzzle, or even preparing a sandwich (which the ALJ also points to for support) – all of which require at least a modicum of consistent/persistent concentration and attention in order to complete the task – watching television requires none. Nevertheless, the ALJ's overreliance on Fauvie's hobby does not justify remand of her case because, even if her television consumption were disregarded, substantial evidence supported the ALJ's finding regarding that area of mental functioning. *See Kobetic v. Comm'r of Soc. Sec.,* 114 F. App'x. 171, 173 (6th Cir. 2004) (recognizing that the court does not remand when it "would be an idle and useless formality." (internal quotation marks omitted)).

25

Finally, as to the mental functioning area of adapting and managing oneself, such evidence includes: (1) Dr. Haaga's assessment that Fauvie had adequate abilities but may face struggles given her lack of social support (Tr. 321-322, 324); (2) treatment notes indicating Fauvie could self-regulate when upset (Tr. 336-337); (3) Fauvie's and Kraft's function reports indicating that she could care for herself, her finances, and prepare meals (Tr. 217-219, 259); (4) the state agency consultants' assessments that she was only moderately limited (Tr. 65-66, 86); and (5) the general lack of discussion of the issue. *Biestek*, 139 S. Ct. at 1154.

The above evidence further demonstrates that substantial evidence also supports the ALJ's conclusion that Fauvie failed to meet the Paragraph C criteria requiring that Fauvie have only a minimal capacity to adapt to changes in her environment or demands not already part of her daily life. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15.  Accordingly, the substantial evidence that demonstrates that Fauvie had only moderate limitations in her ability to adapt and manager herself applies with equal force to the evaluation of her limitations under Paragraph C. *Biestek*, 139 S. Ct. at 1154.

As a result, even if a preponderance of the evidence supported Fauvie's contention that her limitations were more than moderate and constituted marked limitations, the fact that substantial evidence also supports the ALJ's moderate findings means the Commissioner's decision cannot be overturned. *See O'Brien*, 819 F. App'x at 416.  I recommend the decision be affirmed.

### D.        Step Four: Subjective Symptoms Complaints

Fauvie contends that the ALJ erred in evaluating her subjective symptom complaints by disregarding "any evidence which supported [her] testimony regarding her limitations." ECF Doc. 13 at 14-15.  She argues that the ALJ provided insufficient analysis of the evidence and

failed to consider the residual effects of her back and neck pain and other evidence, including

Amanda Kraft's opinion.[4] ECF Doc. 13 at 15-16, 21-22. Specifically, she argues that the ALJ

failed to articulate a rationale for finding her subjective statements inconsistent with the

evidence, providing only a boilerplate explanation. ECF Doc. 13 at 19-21. The Commissioner

disagrees. ECF Doc. 16 at 32-36.

A claimant's subjective symptom complaints are among the evidence that an ALJ must

consider in assessing a claimant's RFC at Step Four. *See* 20 C.F.R. § 416.920(e); *Blankenship v.*

*Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989) ("Subjective complaints of pain or other symptoms

may support a claim of disability."). Generally, an ALJ must explain whether she finds the

claimant's subjective complaints consistent with objective medical evidence and other evidence

in the record. SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017); *Felisky v. Bowen*, 35 F.3d

1027, 1036 (6th Cir. 1994) (The ALJ must clearly explain her reasons for discounting subjective

complaints). In conducting this analysis, the ALJ may consider several factors, including

claimant's efforts to alleviate her symptoms, whether any treatment was effective, and any other

factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR

LEXIS 4 *15-19; 20 C.F.R. § 416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F.

App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to

perform day-to-day activities in determining whether his testimony regarding his pain was

credible). The regulations don't require the ALJ to discuss each factor or each piece of evidence,

but only to acknowledge the factors and discuss the evidence that supports her decision. *See*

*Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss

---

[4] It is unclear from Fauvie's briefing whether she intends her reference to Kraft to be as support for her argument about her subjective symptom complaints, an independent challenge to the ALJ's evaluation of Kraft's function report, or both. In an abundance of caution, I have addressed both of Fauvie's apparent contentions; the ALJ's evaluation of Kraft's report will be considered below.

methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints." (quotation omitted)); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("'[A]n ALJ is not required to discuss all the evidence submitted.'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

The ALJ applied the proper legal standards and reached a determination supported by substantial evidence in finding that Fauvie's subjective symptom complaints were inconsistent with the medical evidence.  42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241.  Here, the ALJ not only acknowledged her obligation to consider the factors delineated in SSR 16-3p, but also acknowledged Fauvie's limited and spotty treatment sessions were consistent with her lack of resources and sporadic housing.  SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. § 416.929(c)(3); (Tr. 17-18).  The ALJ also reviewed Fauvie's physical and mental health-related complaints.  (Tr. 18).  On that basis, the ALJ provided a general statement that the treatment record did not support her allegations and then, albeit with a summary of the medical evidence in between, provided a detailed explanation of how she found the medical evidence did not support Fauvie's complaints.  (Tr. 18-22).  Confusingly, Fauvie asserts that the ALJ relied solely on the boilerplate explanation in finding her complaints inconsistent in the record despite her earlier contentions that the ALJ's analysis "appeared focused on imply that Fauvie's symptoms were not valid."  ECF Doc. 13 at 15, 20.

Regardless of Fauvie's contentions, the ALJ clearly did not rely solely on boilerplate to state her analysis of Fauvie's subjective symptoms complaints.  Rather, the ALJ spent two paragraphs identifying various inconsistencies, such as medical imaging not showing any narrowing as required by the medical listing, consultive examination notes not indicating any reduced range of motion, Fauvie's ability to walk, Fauvie's exhibited recall abilities, Dr. Haaga's

finding that she had adequate concentration, and Kraft's report that she could follow written and oral instructions. (Tr. 22). The ALJ's discussion of such inconsistencies built a logical bridge between the evidence, summarized just paragraphs before, and her conclusion that Fauvie's complaints were inconsistent. SSR 16-3p, 2016 SSR LEXIS 4 *15; *Felisky*, 35 F.3d at 1036 .

Moreover, the ALJ's conclusion was supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241. Regarding Fauvie's physical complaints, such evidence includes: (1) treatment notes indicating she had a normal gait or unassisted walking (Tr. 268, 272, 347, 423); (2) medical imaging showing a lack of narrowing in Fauvie's spine (Tr. 265-267, 361, 363); (3) Kraft's reports that Fauvie cleaned and would try to go outside every day (Tr. 259-260); (4) Dr. Schefft's report that Fauvie had reduced strength but no atrophy and she could perform various movements (Tr. 347-349, 351); and (5) the state agency consultants' findings that Fauvie was not fully restricted by her shoulder or in her movement (Tr. 62-63, 81). *Biestek*, 139 S. Ct. at 1154.

As to her mental health complaints, the ALJ's finding was likewise supported by substantial evidence, such as: (1) treatment notes reporting Fauvie as engaged and participative in sessions (Tr. 326-335, 337-338); (2) Dr. Haaga's findings that Fauvie could recall material and had adequate concentration (Tr. 321); (3) Dr. Haaga's findings that Fauvie appeared well groomed and had normal speech (Tr. 320); and (4) the state agency consultants' findings that Fauvie had moderate – but not marked – limitations in some areas (Tr. 64-66, 84-86). *Biestek*, 139 S. Ct. at 1154. Although the ALJ falls into the same trap of relying on Fauvie's television consumption as support for her mental functioning, as with the ALJ's analysis of the medical listings, even if disregarded, substantial evidence still support's the ALJ's findings. *See Kobetic*, 114 F. App'x. at 173.

Accordingly, because the ALJ's finding was supported by substantial evidence, it falls within the Commissioner's "zone of choice." *Mullen*, 800 F.2d at 545.  I recommend that Fauvie's argument on this point be rejected and the Commissioner's decision be affirmed.

### E.      Step Four: Medical Opinions

Fauvie contends that ALJ erred in weighing Thompson's opinion.  ECF Doc. 13 at 16-19. She argues that the consultive examiner's opinion and the state agency consultant's opinions were all consistent with Thompson's limitations.  ECF Doc. 13 at 17-19.  Because of this consistency, she argues that the ALJ failed to provide a coherent explanation for why Thompson's opinion was found unpersuasive.  ECF Doc. 13 at 19.  Fauvie also appears to assert that the ALJ also erred in finding Amanda Kraft's opinion was not an acceptable medical source and failing to conduct a persuasiveness analysis of Kraft's opinion.  ECF Doc. 13 at 21.  The Commissioner disagrees on both counts.  ECF Doc. 16 at 29-32, 35.  Fauvie contends for the first time in her reply that the ALJ erred in weighing the consultant's and state consultants' opinions because, although persuasive, the ALJ did not include their limitations in his ultimate RFC finding.[5]  ECF Doc. 17 at 1-2.  She also reiterates her arguments regarding Thompson. ECF Doc. 17 at 3.

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record.  20 C.F.R. § 416.920(e). In doing so, the ALJ is required to "articulate how [she] considered the medical opinions and prior administrative medical findings."  20 C.F.R. § 416.920c(a).  At a minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion(s),

---

[5] Because Fauvie raises these arguments challenging the ALJ's evaluation of these opinions for the first time in reply, her arguments are forfeited.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (identifying that "waiver is affirmative and intentional, whereas forfeiture is more passive," such as failing to raise an argument in an opening appellate brief).

but generally is not required to discuss other factors.  20 C.F.R. § 416.920c(b)(2).[6]  According to

the regulation, the more consistent a medical opinion is with the evidence from other medical

and nonmedical sources, the more persuasive the medical opinion will be.  This is the

consistency standard.  And the regulation specifies that the more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or her

medical opinion, the more persuasive the medical opinion will be.  This is the supportability

standard.  *See* 20 C.F.R. § 416.920c(c)(1)-(2).

> Under SSR 16-3p:
>
> Other sources may provide information from which we may draw inferences and
> conclusions about an individual's statements that would be helpful to us in
> assessing the intensity, persistence, and limiting effects of symptoms. Examples
> of such sources include . . . non-medical sources such as family and friends. . . .
> The adjudicator will consider any personal observations of the individual in terms
> of how consistent those observations are with the individual's statements about
> his or her symptoms as well as all of the evidence on file.

SSR 16-3p, 2016 SSR LEXIS 4, at *17-18.  Although the ALJ is required to consider personal

opinions of friends and family, the ALJ is not "required to articulate how [she] considered the

evidence from nonmedical sources using the requirements in [20 C.F.R. 404.1520c(a)-(c)]."  20

C.F.R. 404.1520c(d).

The ALJ applied the proper legal standards and reached a decision supported by

substantial evidence in finding Thompson's opinions unpersuasive and in not conducting a

persuasiveness analysis of Kraft's function report opinion.  42 U.S.C. § 1383(c)(3); *Rogers*, 486

F.3d at 241.  As to Thompson, the ALJ met her obligations under 20 C.F.R. § 416.920c(c) by

identifying and discussing those factors supporting Thompson's opinion and any inconsistencies

---

[6] Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship
to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability
program and other evidence in the record.  20 C.F.R. § 416.920c(c)(3)-(5).

with the other medical evidence.  (*See* Tr. 21).  Specifically, the ALJ stated that "Nurse Thompson provided no support for her opinion in the document itself beyond a reference to the claimant's depression and anxiety." *Id*.  Moreover, she noted that the treatment notes by Thompson failed to provide support for the degree of limitations she found. *Id.*  The ALJ also identified numerous inconsistencies between Thompson's proposed limitations and the medical evidence.  The ALJ identified that Thompson's limitations conflicted with evidence that Fauvie had good recall abilities, adequate concentration, could follow oral and written instructions, visited with family and friends, did not have any issues following authority, had normal grooming and hygiene, did household chores, and was capable of managing her own funds. *Id*. Because the ALJ explained the inconsistencies and supportability issues related to Thompson's opinion, and provided support for those findings, the ALJ met her obligations under the regulations.  20 C.F.R. § 416.920c.

Substantial evidence supports the ALJ's decision to find Thompson's opinion unpersuasive.  42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241.  The ALJ correctly noted that Thompson's assessment and treatment notes are far from a fount of information regarding Fauvie's conditions.  Thompson's assessment is essentially a check list of limitations, which would not necessarily be a problem if her treatment notes provided foundation and justification for the limitations noted.  (*See* Tr. 357-358).  However, her treatment notes provide only the barest of explanations.  Aside from being nearly unreadable due to the illegible handwriting, what is discernable bears little relation to Fauvie's ability to function, focusing instead on her circumstances.  (*See* Tr. 343-344, 411-414).  As a result, Thompson's assessment had no internal explanation supporting it, nor could her treatment notes be drawn upon for any reasoning or

justification and, thus, it failed to provide persuasive support.  *See* 20 C.F.R. § 416.920c(c)(1);
*Biestek*, 139 S. Ct. at 1154.

As to inconsistency, as discussed above with the ALJ's analysis of the mental health
medical listings, substantial evidence supports the ALJ's determination of only moderate
limitations.  The same evidence supporting the ALJ's finding of only moderate mental
functioning limitations supports the ALJ's conclusions that Thompson's marked limitations were
inconsistent with the other medical evidence.  Such evidence includes: (1) Dr. Haaga's
assessment of Fauvie's adequate or moderately limited functioning across the same areas
(Tr. 321-324); (2) Kraft's report that Fauvie could take care of her personal needs, follow
instructions, and get along well with others (Tr. 260-262); (3) the state agency consultants'
assessments that Fauvie only had moderate limitation (Tr. 63-66, 84-86); and (4) treatment notes
indicating Fauvie was engaged, and participative in her sessions (Tr. 326-335, 337-338).
*Biestek*, 139 S. Ct. at 1154.

Moreover, as to Kraft's function report, the ALJ did not err by not conducting a
persuasiveness analysis of the opinion.  42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241.  The
ALJ was required to consider the opinion, which the decision makes clear she did.  (Tr. 21).  But
under the regulations, she was under no obligation "to articulate how [she] considered the
evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  And there can be no reasonable
dispute (and Fauvie does not contend otherwise) that Kraft was not a medical source.
Accordingly, the ALJ applied the proper legal standards as to each opinion and her conclusions
were supported by substantial evidence where needed.  SSR 16-3p, 2016 SSR LEXIS 4,
at *17-18.  As a result, those determinations fell within her "zone of choice."  *See Mullen*, 800
F.2d at 545.  I recommend the ALJ's decision be affirmed on this ground.

### III.     Recommendation

I recommend that the Court conclude that Fauvie lacks standing to pursue her asserted constitutional violation.  Further, because the ALJ otherwise applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Fauvie's application for SSI be affirmed.

Dated: March 15, 2022

Thomas M. Parker
United States Magistrate Judge

_____

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C. § 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'"  *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).