UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FELICIA FAUVIE, | ) | CASE NO. 4:20-cv-2750 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Felicia Fauvie ("Fauvie") appeals from the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). The matter was referred to Magistrate Judge Thomas M. Parker for the preparation of a Report and Recommendation ("R&R"). The R&R recommends that the Court affirm the Commissioner's decision. (Doc. No. 18.) Fauvie has filed objections to the R&R (Doc. No. 19), and the Commissioner has filed a response. (Doc. No. 20.) Upon *de novo* review and for the reasons set forth below, the Court overrules the objections, accepts the R&R, and dismisses the case.

I.  **BACKGROUND**

Fauvie filed her application on March 29, 2018. (Doc. No. 12 (Administrative Transcript) at 16.[1]) She alleged disability beginning January 1, 2004. (*Id.*) The application was denied

---

[1] Page number references are to the page numbers assigned to each individual document by the Court's electronic filing system, a practice recently adopted by the Court.

initially, and upon reconsideration. Fauvie requested a hearing before the Administrative Law Judge ("ALJ"). The hearing, at which Fauvie appeared with counsel, was conducted on January 28, 2020. (*Id*.) The hearing transcript is in the record. (*Id*. at 34–58.)

On March 12, 2020, the ALJ issued her decision. (*Id*. at 16–28.) The ALJ found that Fauvie had severe impairments of "Degenerative Disc Disease of the Cervical Spine and the Lumbar Spine, Asthma, Depression, Anxiety, Post-Traumatic Stress Disorder ("PTSD")[,] Agoraphobia and Substance Abuse Disorder[.]" (*Id*. at 18.) The ALJ further determined that these impairments did not meet or equal any listed impairment, and that Fauvie had retained the residual functional capacity ("RFC") to perform a range of light work with certain specific limitations. (*Id*. at 19–21.) The ALJ concluded that, while Fauvie had no past relevant work, she could perform several light duty jobs for which there was a significant number of jobs existing in the national economy and she was, therefore, not disabled. (*Id*. at 21–28.)

Fauvie timely filed the instant action seeking judicial review. Fauvie, represented by counsel, filed a brief on the merits (Doc. No. 13), the Commissioner filed a response brief on the merits (Doc. No. 16), and Fauvie filed a reply. (Doc. No. 17.) On March 15, 2022, the magistrate judge issued his R&R, recommending that the Commissioner's decision be affirmed because it applied the appropriate legal standards and was supported by substantial evidence.

II. **DISCUSSION**

A. **Standard of Review**

This Court's review of the magistrate judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested

resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]"); Local Rule 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[]").

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854–55 (6th Cir. 2010). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor need the reviewing court necessarily agree with the Commissioner's determination in order to affirm it. "Even if [the] Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle*, 609 F.3d at 854–55. This is true even if substantial evidence also supports the claimant's position. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The

findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.").

Even when there is substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Likewise, a court "cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544–46 (6th Cir. 2004)).

### B. Plaintiff's Objections and Analysis

#### 1. The President's Removal Power (42 U.S.C. § 920(a)(3))

In her first objection, Fauvie questions the magistrate judge's conclusion that Fauvie lacks standing to challenge the constitutionality of 42 U.S.C. § 920(a)(3). (Doc. No. 19 at 1–3; *see* Doc. No. 18 at 1.) She cites cases she believes demonstrate that, as a social security claimant, she has the requisite ability to raise a constitutional challenge to the removal statute. (Doc. No. 19 at 1 (citing cases).) The Court need not weigh in on this debate because, assuming standing, even a successful constitutional challenge to § 920(a)(3) would not require remand.

Fauvie relies on *Seila Law LLC v. Consumer Fin. Protection Bureau*, --U.S.--, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020). In *Seila Law*, the United States Supreme Court held that the

Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id*. at 2197. The Supreme Court addressed a similar removal provision again the following year in *Collins v. Yellen*, --U.S.--, 141 S. Ct. 1761, 210 L. Ed. 2d 432 (2021). There, the Supreme Court held a provision limiting the President to removing the Directors of the Federal Housing Finance Agency ("FHFA") only for cause, 12 U.S.C. § 4512(b)(2), also violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding "*Seila Law* is all but dispositive").

Because 42 U.S.C. § 902(a)(3), the statute governing the removal of the Commissioner of the Social Security Administration ("SSA"), contains a similar restriction on the President's ability to remove the Commissioner except for cause, Fauvie contends that § 902(a)(3) also unconstitutionally violates the separation of powers.[2] Fauvie argues that this matter must be remanded for a new hearing because the Commissioner "had no constitutionally valid authority to delegate to [the ALJ] or Appeals Council Judges." (Doc. No. 19 at 2; *see* Doc. No. 13 at 1 ("The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived her

---

[2] Specifically, § 902(a)(3) provides:

> The Commissioner shall be appointed for a term of 6 years, except that the initial term of office for Commissioner shall terminate January 19, 2001. In any case in which a successor does not take office at the end of a Commissioner's term of office, such Commissioner may continue in office until the entry upon office of such a successor. A Commissioner appointed to a term of office after the commencement of such term may serve under such appointment only for the remainder of such term. An individual serving in the office of Commissioner *may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office.*

42 U.S.C. § 902(a)(3) (emphasis added).

authority from Andrew Saul was constitutionally defective.").) The Commissioner does not dispute that, under *Selia Law*, the removal statute is unconstitutional. (Doc. No. 16 at 9 ("The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's ability to remove the Commissioner without cause.").)

Even assuming that § 902(a)(3)'s removal provision is unconstitutional, however, remand is not warranted for at least two reasons. First, the removal provision is severable. In *Seila Law*, the Supreme Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. *Seila Law*, 140 S. Ct. at 2209. Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional. *See, e.g., Lisa Y. v. Comm'r of Soc. Sec.*, --F. Supp. 3d--, No. C21-5207, 2021 WL 5177363, at *6 (W.D. Wash. Nov. 8, 2021) (finding the removal provision in § 902(a)(3) severable because there is "no dispute that since the promulgation of § 902(a)(3), the SSA has continued to function fully and has granted and denied thousands of benefits applications"); *Bowers v. Comm'r of Soc. Sec.*, No. 2:20-cv-6024, 2022 WL 34401, at *7 (S.D. Ohio Jan. 4, 2022) (R&R recommending the endorsement of a similar severability argument), *report and recommendation adopted by Angela A.B. v. Comm'r of Soc. Sec.*, No. 2:20-cv-6024, 2022 WL 774053 (S.D. Ohio Mar. 14, 2022).

Second, the removal provision does not render the Commissioner's appointment invalid and does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Supreme Court found the defective removal procedure did not render the FHFA's actions void

6

from the outset.[3] *Collins*, 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.") (emphasis in the original). The same is true here. The removal provision does not render Commissioner Saul's appointment invalid, which in turn does not render the ALJ's [or the Appeals Council's] disability decision void. *See, e.g., Bryan L. v. Comm'r of Soc. Sec.*, No. 2:21-cv-2835, 2022 WL 537577, at *6 (S.D. Ohio Feb. 23, 2022) (R&R recommending the rejection of a similar argument); *Bowers*, 2022 WL 34401, at *7 (similar).

Instead, to warrant a remand, Fauvie would have had to make a showing that the removal clause in § 902(a)(3) inflicted upon her compensable harm. In *Collins*, the Supreme Court found it was "possible for an unconstitutional provision to inflict compensable harm[,]" and remanded to the lower court to determine whether the removal provision itself inflicted such harm. *Collins*, 141 S. Ct. at 1788–89 and n.23 (explaining that "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office"). As Justice Thomas's concurring opinion clarified, a plaintiff must do more than point to a conflict between the removal statute and the Constitution; she must show some action on the part of the

---

[3] Fauvie argues the magistrate judge erred in relying on *Collins, supra*, instead of *Tafoya v. Kijakazi*, 551 F. Supp. 3d 1054 (D. Col. July 29, 2021) because "*Tafoya* dealt with the Social Security Administration and ALJs, [and] *Collins* dealt with shareholders in the Federal National Mortgage Association." (Doc. No. 19 at 2.) But *Tafoya*, an unreported decision from a district court outside this judicial district, only addressed a plaintiff's standing to bring a claim, which requires far less of a showing than establishing harm from an unconstitutional provision. Moreover, Fauvie overlooks the fact that, even with respect to standing, other district courts have concluded that a social security claimant lacks standing to challenge the constitutionality of § 902(a)(3)'s removal provision. *See, e.g., Miley v. Comm'r of Soc. Sec.*, No. 1:20-cv-2550, 2021 WL 6064754, at *1 (N.D. Ohio Dec. 22, 2021). In any event, the argument is moot inasmuch as the Court has assumed standing for purposes of its analysis.

commissioner or the director that was unlawful and harmful to her. *See id*. at 1790–91 (Thomas, J., concurring). Such a showing, Justice Kagan observed, would be difficult to make. *Id.* at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference[.]").

Here, Fauvie has failed to make the necessary showing of compensable harm. She claims that "Mr. Saul had no constitutionally valid authority to delegate to [the ALJ] or Appeals Council Judges [in this instance]." (Doc. No. 19 at 2.) Courts have routinely rejected similar defective delegation arguments. *See, e.g., Cutlip v. Kijakazi*, No. 1:20-cv-202, 2022 WL 812378, at *4–5 (W.D. Ky. Mar. 16, 2022) (rejecting argument that ALJ and Appeals Counsel Judges derived their authority from the Commissioner who was not constitutionally appointed); *Lynch v. Comm'r of Soc. Sec.*, No. 1:21-cv-556, 2022 WL 614777, at *16 (N.D. Ohio Mar. 2, 2022) (finding that compensable injury was not established by claimant's assertion that the ALJ who decided the case was under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate); *Bowers*, 2022 WL 34401, at *7–8 (similar). Fauvie has not demonstrated any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying her benefits, and has, therefore, failed to demonstrate a compensable injury. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions

below on that ground.").[4]

Other district court in this judicial district have likewise concluded that any constitutional defect in the removal portion of § 902(a)(3) does not justify the vacation and remand of a social security benefits determination by an ALJ. *See, e.g, Reese v. Kijakazi*, No. 5:20-cv-2385, 2022 WL 831122, at *3–4 (N.D. Ohio Mar. 21, 2022); *see also Rives v. Comm'r of Soc. Sec.*, No. 1:20-cv-2549, 2022 WL 681273, at *2–3 (N.D. Ohio Mar. 8, 2022) (finding that the social security claimant lacked standing to challenge the constitutionality of the removal statute). "Indeed, courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand." *Bryan L.*, 2022 WL 537577, at *6 (collecting cases); *see Crawford v. Comm'r of Soc. Sec.*, No. 2:21-cv-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021) (similar and collecting cases). This Court agrees and finds that any constitutional infirmity in the removal statute does not require the Court to reverse the ALJ's decision.[5] Accordingly, Fauvie's first objection is overruled.

---

[4] In her merits brief, Fauvie argues that "[t]he ALJ in this matter decided this case based on regulations promulgated by Mr. Saul when he had no authority to issue the same." (Doc. No. 13 at 9.) In her reply, Fauvie points to certain regulations imposed during Mr. Saul's tenure that altered the way in which decisions were written and modified the way in which musculoskeletal impairments are evaluated. (Doc. No. 17 at 5.) Fauvie fails, however, to explain how these regulatory changes in any way affected or negatively impacted the ALJ's decision in her case.

[5] The Commissioner further argues that the ALJ served under an appointment by an acting commissioner who was not subject to the removal statute. Specifically, ALJ Mary Lohr held office under an appointment ratified in July 2018 by then-Acting Commissioner Nancy Berryhill. In her capacity as acting commissioner, Berryhill enjoyed no statutory tenure protection, and, therefore, was not subject to the removal provision in § 902(a)(3). (Doc. No. 16 at 11–13.) Fauvie does not dispute that ALJ Lohr was appointed by Berryhill. (*See* Doc. No. 17 at 6.) And as such, for this additional reason, the constitutionally defective removal statute does not provide a basis for remand. *See, e.g., Thomas E. v. Comm'r of Soc. Sec.*, No. C21-5107, 2021 WL 5415241, at *5–6 (W.D. Wash. Nov. 19, 2021); *Alice T. v. Comm'r of Soc. Sec.*, No. 8:21-cv-14, 2021 WL 5302141, at *18–19 (D. Neb. Nov. 15, 2021).

### *2. Concentration, Persistence, and Pace*

In her second objection, Fauvie takes issue with the magistrate judge's conclusion that "substantial evidence supported the ALJ's findings specifically as to the mental functioning area for concentrating, persisting or maintaining pace." (Doc. No. 18 at 24; *see* Doc. No. 19 at 3.) In her decision, the ALJ listed Fauvie's ability to "watch[] television" among the reasons she found Fauvie had only a moderate limitation in this area. (Doc. No. 12 at 20.) The magistrate judge acknowledged that the ALJ's reliance on Fauvie's ability to watch television was troubling. (Doc. No. 18 at 25 ("Fauvie raises a concern that the ALJ's reliance on her daily activities [including her ability to watch television] was not reflective of her actual limitations. That concerned me as well.") (record cite omitted)). In particular, the magistrate judge found it "a bit farfetched" that television consumption could be supportive of the ability to concentrate and pay attention. (*Id.*) And in fact courts have questioned whether such a passive activity can have any bearing on an individual's ability to concentrate. *See Kelley v. Soc. Sec. Admin. Comm'r*, No. 6:16-cv-1875, 2018 WL 1535344, at *9 (N.D. Ala. Mar. 29, 2018) ("The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean Plaintiff is not disabled.") (citation omitted); *Hesselroth v. Colvin*, No. 11-cv-1417, 2013 WL 1935079, at *9 (D. Minn. Mar. 27, 2013) ("The ALJ noted that [the claimant] watches television without reported concentration difficulties, but failed to note that there are no indications that [the claimant] does not become distracted when watching television or explain how his ability to watch television would translate into the capacity to concentrate for prolonged periods of time in a work setting.") (emphasis omitted); *but see Pratt v. Barnhart*, 158 F. App'x 643, 644–45 (5th Cir. 2005) (finding that activities like watching television can be considered in a RFC because

10

they "suggest some ability to concentrate") (citations omitted).

Despite his concern over the ALJ's "overreliance on Fauvie's hobby," the magistrate judge concluded that remand was not warranted because, "even if her television consumption were disregarded, substantial evidence supported the ALJ's finding regarding that area of mental functioning." (Doc. No. 18 at 25 (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (recognizing that the court does not remand when it "would be an idle and useless formality.") (internal quotation marks and citation omitted)). Fauvie takes issue with this conclusion, positing that "[t]he act of watching television was the ALJ's justification for finding that [Fauvie] had only moderate limitations in her 'B' criteria." (Doc. No. 19 at 3–4; *see id.* at 3 ("the basis for [the ALJ] finding that [Fauvie] had functional memory and functional concentration was based on her ability to watch television").)

But Fauvie's television consumption was not the ALJ's *sole* basis for concluding that Fauvie had only moderate impairment in the area of concentration, persistence, and pace. In fact, the ALJ relied primarily on the opinion of the psychological consultative examiner who opined that Fauvie's concentration was adequate. (Doc. No. 12 at 20, 24 & Exhibit 4F.) According to this examiner, notwithstanding her anxiety and panic attacks, Fauvie retained the ability to calculate five digits forward and four digits backward. (Doc. No. 12 at 20.) Fauvie does not take issue with the weight the ALJ gave to the psychological examiner's opinion, and even relies on some of the examiner's conclusion in her objections.[6] (*See, e.g.*, Doc. No. 19 at 3.) Additionally, while the ALJ mentioned watching television as an example of a daily activity that demonstrated

---

[6] In her decision, the ALJ found the opinion of the psychological consultative examiner, though somewhat "vague," to be supported by Fauvie's performance during the examination and Fauvie's treatment records. (Doc. No. 12 at 24.)

11

the ability to concentrate, she also identified the act of preparing meals, which Fauvie does not deny requires at least some level of concentration. (Doc. No. 12 at 20; *see* Doc. No. 18 at 25 (magistrate judge observing that preparing a sandwich requires "at least a modicum of consistent/persistent concentration and attention in order to complete the task").)

The ALJ also cited hearing testimony and exhibits in the record, including function reports, psychological evaluations, medical progress notes, and office treatment notes. (*See* Doc. No. 12 at 20 (citing hearing testimony, as well as Exhibits 3E, 12E, 2F, 4F, 5F, and 11F).) Collectively, these transcripts and documents provided that, while Fauvie experiences some memory impairment due to stress and anxiety, she retained the ability to do laundry regularly, occasionally do dishes, and manage her finances, as well as comprehend, remember, and perform simple and routine tasks.[7] (*See* Exhibits 3E, 12E, 2F, 4F, 5F, and 11F.)

Fauvie references the fact that the examining psychologist opined that Fauvie would require "some additional reminders and assistance when learning new jobs or when anxious or overwhelmed[.]" (Doc. No. 19 at 3 (citing Exhibit 4F).) As set forth above, however, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *See Worthy v. Comm'r of Soc. Sec.*, No. 1:20-cv-446, 2021 WL 2905265, at *10 (N.D. Ohio Jan. 27, 2021) ("At most [the claimant] has shown how the ALJ could have reached the opposite conclusion on her Listings argument; but that is not enough to sustain her burden of proof."). "'The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference

---

[7] As further support, the ALJ underscored that the State agency reviewing psychologists also found that Fauvie had no more than moderate restrictions in the paragraph "B" categories. (Doc. No. 12 at 25–26, 64–65, 82–83.)

from the courts. If the [administrative] decision is supported by substantial evidence, a reviewing court must affirm.'" *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281–82 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)); *see Reusel v. Comm'r of Soc. Sec.*, No. 5:20-cv-1291, 2021 WL 1697919, at *9 (N.D. Ohio Apr. 29, 2021) (same) (citations omitted).

The Court shares the magistrate judge's concern over the reference to television watching as evidence of concentration, and the Court further understands that Fauvie believes that the ALJ should have evaluated the remaining evidence in the record in a different way. Nevertheless, even without the reference to watching television, there is substantial evidence in the record to support the ALJ's finding as to Fauvie's abilities relative to concentration and persistence. So long as the ALJ's conclusions are supported by substantial evidence, the Court must affirm the Commissioner's decision, even if there is substantial evidence supporting the opposite conclusion as well. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."); *see, e.g., Leak v. Berryhill*, No. 1:17-cv-289, 2018 WL 1033276, at *10 (M.D. N.C. Feb. 22, 2018) ("However, despite [his reference to the claimant's ability to watch television and occasionally shop for groceries], the ALJ ultimately supported the moderate limitation in CPP [concentration, persistence or pace] with substantial evidence"). Accordingly, the magistrate judge properly determined that the ALJ's conclusions fell within the permissible "zone of choice," and Fauvie's second objection is overruled.

### III. CONCLUSION

For the reasons discussed above, Fauvie's objections to the R&R are overruled. The R&R is accepted. Because the Commissioner's decision to deny SSI is supported by substantial evidence, that decision is affirmed, and this case is dismissed with prejudice.

**IT IS SO ORDERED**.


Dated: July 11, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**